# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **JOANNE DEPALO, individually and on behalf of all others similarly situated,** | ) ) ) | |
| | ) | **CIVIL ACTION NO. _____** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **BUFFALO WILD WINGS, INC. and BUFFALO WILD WINGS INTERNATIONAL, INC.,** | ) ) ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S ORIGINAL COLLECTIVE ACTION
## <u>AND CLASS ACTION COMPLAINT</u>

1.  The case implicates Defendant Buffalo Wild Wings, Inc.'s and Defendant Buffalo Wild Wings International, Inc.'s ("Defendants" collectively) violations of the Fair Labor Standards Act's ("FLSA") and the New York Labor Law's ("NYLL") tip credit and the subsequent underpayment of their employees at the minimum wage rate for all hours worked.  Plaintiff brings this case as a collective action under the FLSA, 29 U.S.C. 216(b) and a class action pursuant to Fed. R. Civ. P. 23 to remedy violations of the NYLL.

## SUMMARY OF ACTION

2.     Defendants pay their tipped employees, including servers and bartenders, below the minimum wage rate by taking advantage of the tip-credit provisions of the FLSA and, in New York, the NYLL. Under the tip-credit provisions, an employer of tipped employees may, under certain circumstances, pay those employees less than the minimum wage rate by taking a "tip credit" against the employer's minimum wage obligations from the tips received from customers.

3.     However, there are strict requirements for an employer to utilize the "tip credit." *See* 29 U.S.C. 203(m).  An employer must advise an employee in advance of its use of the tip credit pursuant to the provisions of section 3(m) of the FLSA. *See id.* (the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection."). That is, the employer must inform the employee: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

4.      Further, it is illegal for employers to require tipped employees to give up a portion of their tips to their employer or to ineligible employees, such as management staff. *See Myers v. Copper Cellar Corp*., 192 F.3d 546, 551 (6th Cir. 1999) (for "the work shifts in which salad mixers were included within the tip pool, the pooling scheme was illegal..."); *Portales v. MBA Inv. Co., LLC,* No. 3:13CV00001, 2014 WL 5795206, at *3 (N.D. Ohio Oct. 16, 2014) ("When an employer includes a non-customarily tipped employee or another employer in a mandatory tip pool, the pool is invalid under FLSA." (citing 29 U.S.C. § 203)); *Bernal v. Vankar Enter., Inc*., 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008) (employer not permitted to take the FLSA tip credit when it required waiters to pay for shortages and unpaid tabs).

5.      Additionally, an employer must pay the minimum statutory hourly rate ($2.13 per hour under the FLSA and $8.35 in New York). *See* 29 U.S.C. 203(m).

6.      Moreover, an employer cannot pay below the minimum wage to tipped employees and require those tipped employees to perform non-tipped work that is unrelated to the tipped occupation.  *See Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties…such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms,

they are entitled to the full minimum wage for the time they spend at that work."); *Romero v. Top-Tier Colorado LLC*, 849 F.3d 1281, 1285 (10th Cir. 2017); *Osman v. Grube, Inc.,* No. 16-CV-802, 2017 WL 2908864, at *4 (N.D. Ohio July 7, 2017) (employer may not take a tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation); *Roussell v. Brinker Intern., Inc.,* No. 05 Civ. 3733, 2008 WL 2714079, at *12 (S.D. Tex. July 9, 2008) ("An employer may take a tip credit for an employee that works 'dual jobs,' but only for the time the employee spends working in his "tipped employee" capacity.") (quoting 29 C.F.R. 531.56(e)).

7.     Finally, an employer cannot require its tipped employees to perform non-tipped work that is related to the employees' tipped occupation but exceeds 20 percent of the employees' time worked during a workweek. *See Marsh v. J. Alexander's, LLC,* 905 F.3d 610, 626-28 (9th Cir. 2018) (adopting 20% standard for dual jobs regulation and finding the DOL's opinion on dual jobs for tipped workers to be entitled to deference); *Fast v. Applebee's Intern., Inc.,* 638 F.3d 872, 881 (8th Cir. 2011) (granting the DOL's 20% standard deference); *Driver v. AppleIllinois, LLC*, No. 06 Civ. 6149, 2012 WL 3716482, at *2 (N.D. Ill. Aug. 27, 2012) ("An employer may take a tip credit only for hours worked by [an] employee in an occupation in which [he] qualifies as a tipped employee."); *Driver v. AppleIllinois,*

*LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (the court indirectly cast its imprimatur on the DOL's aforementioned dual-jobs regulation and Field Operations Handbook, citing both the "related to" standard in 29 C.F.R. § 531.56(e) and the 20% standard in § 30d00(e)); *Flood v. Carlson Restaurants, Inc.*, No. 13 Civ. 6458 (AT), 2015 WL 1396257 (S.D.N.Y. Mar. 27, 2015) (denying Defendants' motion to dismiss explaining that the 20% standard is a reasonable interpretation of the FLSA and ultimately granting 216(b) notice); *Ide v. Neighborhood Restaurant Partners, LLC*, No. 13 Civ. 509 (MHC), 2015 WL 11899143, at *6 (N.D. Ga., 2015) (". . . a reasonable interpretation of § 531.56(e) is that [plaintiff] would be entitled to minimum wage if she spends more than twenty percent of her time performing related but non-tipped duties."); *Crate v. Q's Restaurant Group LLC*, 2014 WL 10556347, at *4 (M.D. Fla., 2014) ("[T]he Court concludes that the 20% rule clarifies the ambiguity contained in 29 C.F.R. § 531.56(e) by delineating how much time a tipped employee can engage in related, non-tip-producing activity before such time must be compensated directly by the employer at the full minimum wage rate.").

8. Defendants violated the FLSA and NYLL in the following respects:

   a. **Violation for failure to inform:** Defendants failed to correctly inform Plaintiff of the desire to rely on the tip credit to meet their minimum wage obligations. In fact, Defendants failed to inform Plaintiff of the following: (1) the amount of the cash wage that is to

be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

b. **Violation for making illegal deductions that reduced the direct wage of Plaintiff below the minimum required hourly wage for tipped employees:** Plaintiff was required to purchase certain clothing to work for Defendants, which reduced her wages below the minimum hourly wage required for tipped employees.

c. **Violation for performing work unrelated to tipped occupation:** Plaintiff was required to perform improper types, and excessive amounts, of non-tipped work, including, but not limited to vacuuming, taking out trash, doing dishes, cleaning bathrooms, sweeping floors, mopping floors, cleaning walls, setting up the blue cheese and celery cart, stocking paper products, and cleaning metal trays.

d. **Violation for performing non-tipped side work in excess of 20% of the time spent working in the week**: Plaintiff was required to perform greater than 20% of his time in performing non-tip producing side work, including, but not limited to setting up tables, rolling silverware, cleaning tables, wiping booths, refilling condiments, amongst other duties.

9.     As a result of these violations, Defendants have lost the ability to use the tip credit and therefore must compensate Plaintiff and all similarly situated workers at the full minimum wage rate, unencumbered by the tip credit, and for all hours worked.  In other words, Defendants must account for the difference between the

wages paid to Plaintiff and all similarly situated workers and the minimum wage rate.

## SUBJECT MATTER JURISDICTION AND VENUE

10.     This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), *et. seq*.  The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to this claim occurred in this district. In particular, Defendants maintain their headquarters and principal place of business in this District. The decision to pay Plaintiff in the illegal manner described in this Complaint was made in this District.

## PARTIES AND PERSONAL JURISDICTION

12.     Plaintiff Joanne DePalo is an individual who worked for Defendants in New York.  Her written consent to this action is attached hereto as Exhibit "A."

13.     The FLSA Class Members are all current and former tipped employees who worked for Defendants for at least one week during the three-year period prior to the filing of this action to the present.

14.    The New York Class Members are all current and former tipped employees who worked for Defendants in New York for at least one week during the six-year period prior to the filing of this action to the present.

15.    The FLSA Class Members and the New York Class Members shall be collectively referred to as the "Class Members."

16.    Defendant Buffalo Wild Wings, Inc. is a foreign corporation doing business in Georgia. Said Defendant may be served with process by serving its registered agent: Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

17.    Defendant Buffalo Wild Wings International, Inc. is a foreign corporation doing business in Georgia. Said Defendant may be served with process by serving its registered agent: Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

18.    Personal jurisdiction exists over Defendants because they have sufficient minimum contacts with the State of Georgia to confer personal jurisdiction. Defendants conduct business throughout Georgia. Furthermore, Defendants contracted with and employ Georgia residents, have Georgia customers, market to residents of Georgia, and own property in Georgia.  Moreover, Defendants maintain their headquarters in Georgia.

## **COVERAGE**

19.     At all material times, Defendants have been an employer within the meaning of the FLSA.  29 U.S.C. § 203(d).

20.     At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of the FLSA.  29 U.S.C. § 203(s)(1).

21.     At all material times, Defendants have enjoyed yearly gross revenue in excess of $500,000.

22.     At all material times, Plaintiff was an employee engaged in the commerce or the production of goods for commerce.

23.     At all material times, Defendants have operated as a "single enterprise" within the meaning of 29 U.S.C. § 203(r)(1).  That is, Defendants perform related activities through unified operation and common control for a common business purpose.

24.     Defendants operate a nationwide chain of restaurants with the name "Buffalo Wild Wings" under the control of the same senior-level management. Indeed, the restaurants advertise themselves as a unified entity through the same website.

25.     Defendants represent themselves to the public as one restaurant operating at multiple locations.  They share employees, have a common management, pool their resources, operate from the same headquarters, have common ownership, and have the same operating name.

26.     Defendants operate under a unified business model and part of that unified business model is the wage violations alleged in this Complaint.

27.     Thus, Defendants formed a "single enterprise" and are liable for the violations of the other.

28.     At all material times, Plaintiff has been an employee of Defendants within the meaning of the NYLL §§ 650 et seq., and the supporting New York State Department of Labor Regulations.

## FACTS

29.     Defendants operate a nationwide chain of restaurants under the trade name "Buffalo Wild Wings" throughout the U.S.  Defendants operate in Arizona, Alabama, Florida, Missouri, Georgia, New Mexico, Oklahoma, Ohio, Tennessee, Texas and other states.

30.     The Buffalo Wild Wings restaurants are full-service restaurants that employ waiters to provide services to customers.

31.     A waiter gathers orders from customers and delivers food and drinks to the customers.  A waiter is paid an hourly wage by Defendants and receives tips from customers.  A bartender prepares and serves drinks to customers.  A bartender is paid an hourly wage by Defendants and receives tips from customers.

32.     However, Defendants paid these tipped workers less than the minimum wage.

33.     Defendants attempted to utilize the tip credit to meet their minimum wage obligation to their tipped workers, including the Plaintiff and Class Members.

34.     Plaintiff worked for Defendants at the Buffalo Wild Wings in Centereach, New York.  She worked as a waitress and was paid less than the minimum wage. Plaintiff worked for Defendants from approximately May 2013 to December 2019.

35.     The tip credit has a harmful effect on workers that threatens the health of the economy.  Adasina Social Capital, a company representing investors with more than $538 billion in assets, has issued a letter to large corporations operating restaurants advising of the ills of using the tip credit.  (*See* https://adasina.com/investor-statement-in-support-of-ending-the-subminimum-wage/, last visited November 5, 2021).  The letter states as follows:

> Tipped workers are the largest group paid a subminimum wage and represent approximately six million people in the United States. The restaurant industry by far employs the largest number of tipped workers, representing 13.6 million people.

> **Frozen at $2.13 per hour, a tipped subminimum wage worker can be paid as little as $4,430 per year for full-time work**. As a result, in the 42 states that allow payment of a subminimum wage, tipped workers are more than twice as likely to live in poverty, and the rates are even higher for women and people of color. The subminimum wage for tipped workers has risen little since it was enacted following the emancipation of slavery, a time when employer trade associations pushed to recoup the costs of free, exploited labor.

(*Id.*) (emphasis in original)

36.     Given the harmful effects of the tip credit, there are strict requirements that must be met by an employer who seeks to utilize the tip credit to meet its minimum wage obligations.

37.     In this case, Defendants did not satisfy the strict requirements to use the tip credit. Defendants maintained a policy and practice whereby they failed to provide the Plaintiff and the Class Members with the statutorily required notice regarding (1) the amount of the cash wage that is to be paid to the tipped employee, (2) the amount by which the wages of the tipped employee are increased on account of the tip credit, (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool, and (4) that the tip credit shall not apply to any employee who does not receive the notice.

38.     Defendants also maintained a policy and practice whereby tipped employees were required to perform non-tip producing side work unrelated to the

employees' tipped occupation. As a result, Plaintiff and the Class Members were engaged in dual occupations while being compensated at the tip credit rate. While performing these non-tip generating duties, they did not interact with customers and could not earn tips.

39.     These duties include but are not limited to the following: vacuuming, taking out trash, doing dishes, cleaning bathrooms, sweeping floors, mopping floors, cleaning walls, setting up the blue cheese and celery cart, stocking paper products, and cleaning metal trays, amongst other activities that were not related to tipped duties.

40.     Defendants also maintained a policy and practice whereby tipped employees were required to spend a substantial amount of time, in excess of 20 percent, performing non-tip producing side work related to the employees' tipped occupation.

41.     Specifically, Defendants maintained a policy and practice whereby tipped employees were required to spend a substantial amount of time performing non-tip producing side work, including, but not limited to setting up tables, rolling silverware, cleaning tables, wiping booths and refilling condiments.

42.     Further, Defendants required Plaintiff and the Class Members to perform non-tip producing work prior to the opening of the restaurant and after the restaurant

closed. Indeed, Defendants required Plaintiff and the Class Members to arrive prior to the restaurant's opening for business, when there were no customers and no opportunities to earn tips, to perform manual labor cleaning and setup duties. Likewise, Defendants required Plaintiff and the Class Members to remain at the restaurants after they had closed for business and when there was no opportunity to earn tips, to perform manual labor cleaning duties.  At times, they spent 31 minutes to two hours performing work before the restaurant was open and the same amount of time after the restaurant was closed performing non-tip producing work.

43.     However, Defendants did not pay their tipped employees the full minimum wage rate for this work. The duties that Defendants required Plaintiff and the Class Members to perform were duties that are customarily assigned to "back-of-the-house" employees in other establishments, who typically receive at least the full minimum wage rate.

44.     During Plaintiff's and the Class Members' employment, checklists were posted in Defendants' restaurants with numerous non-tipped duties that tipped employees were required to perform, in addition to serving customers.

45.     When the tipped employees performed these non-tipped duties, they usually did not interact with customers and did not have an opportunity to earn tips.

14

46.     Indeed, Defendants did not have a policy prohibiting tipped employees from performing certain types, or excessive amounts, of non-tipped work.

47.     Defendants did not track or record the amount of time the tipped employees spent performing non-tipped work, even though Defendants were capable of doing so.  Defendants' timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendants failed to track to the specific tasks for Plaintiff or the Class Members.

48.     Defendants use a point-of-sale system to record hours worked by their tipped employees.  Defendants then analyze the information collected by this system, including the labor costs at each of the restaurants. Defendants' timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendants failed to track the specific tasks for Plaintiff and the Class Members.

49.     In the point-of-sale system, Defendants can create different "clock in" codes that would allow tipped employees to record their time at the full minimum wage when performing non-tipped work.

50.     However, Defendants did not allow their tipped employees to clock-in at the full minimum wage rate when performing the non-tipped work described in this Complaint.

51.     Defendants' managers at the restaurants were eligible to receive bonuses, in part, based on meeting or exceeding certain labor cost targets, which created an incentive to keep the amount paid to tipped employees low.

52.     Moreover, Defendants violated the FLSA and NYLL by not even paying the minimum "tipped" hourly rate.  Defendants required their tipped employees to pay for items for their uniform, including pants, belts, and shoes.  These clothing items were required to perform work for Defendants and were primarily for the benefit and convenience of Defendants. The costs for these items were not reimbursed by Defendants.

53.     Because Defendants paid their tipped employees at the minimum of $2.13 per hour (or the state's respective tipped wage), any week in which a tipped employee was required to pay for work-related expenses for Defendants' business, their compensation fell below the minimum wage rate, thereby negating Defendants' entitlement to claim the tip credit.

54.     In other words, by requiring Plaintiff and the Class Members to pay for these work-related expenses, their hourly rates of pay were reduced by the amount of these uniform costs.  As a result, they were not even paid the minimum hourly rate necessary for Defendants to claim the tip credit.

55.     Furthermore, Defendants failed to properly notify Plaintiff and the New York Class Members in writing of the tip credit provisions of the NYLL, or their intent to apply a tip credit to their wages.

56.     Because Defendants violated the requirements to claim the tip credit, Defendants lost the right to take a credit toward their minimum wage obligation to Plaintiff and the Class Members.

57.     As such, Plaintiff and the Class Members were not compensated at the required minimum wage rate.

58.     In addition, Defendants failed to furnish Plaintiff and the New York Class Members with proper annual wage notices, as required by the NYLL.

59.     Moreover, Defendants failed to furnish Plaintiff and the New York Class Members with accurate statements of wages with each payment of wages as required by the NYLL.

60.     Defendants knew or should have known that their policies and practices violate the law, and Defendants have not made a good faith effort to comply with the FLSA or NYLL. Rather, Defendants acted knowingly, willfully, and/or with reckless disregard of the law carried and continue to carry out the illegal pattern and practice regarding their tipped employees as described in this Complaint. Defendants'

method of paying Plaintiff and the Class Members was not based on a good faith and reasonable belief that their conduct complied with the law.

## REVISED FIELD OPERATIONS HANDBOOK
## AND NEW DUAL JOBS REGULATION

61.     On November 8, 2018, the Department of Labor issued opinion letter FLSA2018-27 which provided a standard for interpreting the dual jobs regulation that was different than the "80/20" rule that had existed at the time.  However, nearly every court to have considered this opinion letter held that the opinion letter was not entitled to any deference. *See, e.g., Callaway v. DenOne, LLC*, No. Civ. A. 1:18-cv-1981, 2019 WL 1090346 (N.D. Ohio Mar. 8, 2019); *Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d 976 (W.D. Mo. 2019). *Spencer v. Macado's, Inc.*, 399 F. Supp. 3d 545, 552-53 (W.D. Va. 2019); *Flores v. HMS Host Corp.*, No. 8:18-cv-03312-PX, 2019 U.S. Dist. LEXIS 183906 (D. Md. Oct. 23, 2019).

62.     Therefore, the Department of Labor announced its intention to revise the dual jobs regulation found in 29 C.F.R. § 531.56(e) and issued a notice of proposed rule-making         on         October         8,         2019.         (*See* https://www.federalregister.gov/documents/2019/10/08/2019-20868/tip-regulations-under-the-fair-labor-standards-act-flsa).

63.     After soliciting comments, the Department of Labor published its final rule on December 30, 2020, which had an effective date of March 1, 2021.

(https://www.federalregister.gov/documents/2020/12/30/2020-28555/tip-regulations-under-the-fair-labor-standards-act-flsa). After delaying the effective date of the Final Rule (https://www.dol.gov/agencies/whd/flsa/tips), on June 21, 2021, the Department of Labor announced "a notice of proposed rulemaking to limit the amount of non-tip producing work that a tipped employee can perform when an employer is taking a tip credit." (https://www.federalregister.gov/documents/2021/06/23/2021-13262/tip-regulations-under-the-fair-labor-standards-act-flsa-partial-withdrawal).

64.      After soliciting more comments, the Department of Labor announced on October 28, 2021, the publication of a final rule (Tips Dual Jobs final rule). (https://www.dol.gov/agencies/whd/flsa/tips).

65.      Under the Final Rule, an employer cannot take a tip credit for any of the time spent by a tipped worker performing any non-tipped work that exceeds 30 minutes. That is, when a tipped worker performs non-tipped work for a continuous period of time exceeding 30 minutes, the employer cannot claim the tip credit.

66.      Here, Defendants illegally required Plaintiff and the Class Members to perform non-tip producing work for an excessive period of time.  That is because Defendants required Plaintiff and the Class Members to perform non-tipped work 31 minutes to two hours before the restaurants were open for business, throughout

their shifts, or after they were closed, when the restaurants did not have customers and there was no opportunity to earn tips.  During this time, Defendants paid below the minimum wage rate and forced the Plaintiff and Class Members to perform non-tip producing duties, as noted above.

67.   Given that Defendants failed to comply with the requirements to take the tip credit, Defendants have lost the ability to claim the tip credit and owe Plaintiff and the Class Members pay at the full minimum wage rate per hour for all hours they worked for Defendants.

## COLLECTIVE ACTION ALLEGATIONS

68.   Plaintiff brings this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendants as a tipped worker for at least one week during the three-year period prior to the commencement of this action to the present.

69.   Plaintiff has actual knowledge, through conversations with her co-workers, that a collective of similarly situated workers exists who have been subjected to the same policies of Defendants with respect to the payment of the minimum wage.

70.   The FLSA Class Members are similarly situated to Plaintiff in that they share the same duties and were subject to the same violations of the FLSA.

71.     Like Plaintiff, the FLSA Class Members were not given proper notice of the tip credit provisions and performed substantial work that was unrelated to their tip producing duties for a significant period of time.

72.     Moreover, the FLSA Class Members were also subject to deductions and expenses that dropped their compensation below the minimum wage.

73.     Plaintiff and the FLSA Class Members all labored under the same corporate structure, the same corporate policies, the same corporate chain of command, and pursuant to the rules in the same company handbook.

74.     The names and addresses of the FLSA Class Members are available from Defendants' records.  To the extent required by law, notice will be provided to these individuals by first class mail, email, text message, or by the use of techniques and a form of notice similar to those customarily used in representative actions.

75.     Although the exact amount of damages may vary among the FLSA Class Members in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

76.     As such, the class of similarly situated Class Members is properly defined as follows:

> **All current and former tipped employees who worked for Defendants for at least one week during the three-year period prior to the filing of this action to the present.**

## NEW YORK CLASS ALLEGATIONS

77.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the New York Class Members which is comprised of the following:

> **All current and former tipped employees who worked for Defendants for at least one week in New York during the six-year period prior to the filing of this action to the present.**

78.     <u>Numerosity</u>.  The number of members in the New York Class is believed to exceed forty.  This volume makes bringing the claims of each individual member of the New York Class before this Court impracticable.  Likewise, joining each individual member of the New York Class as a plaintiff in this action is impracticable.  Furthermore, the identity of the members of the New York Class will be determined from Defendants' records, as will the compensation paid to each of them.  As such, a class action is a reasonable and practical means of resolving these claims.  To require individual actions would prejudice the New York Class and Defendants.

79.     <u>Typicality</u>.  Plaintiff's claims are typical of the New York Class because like the members of the New York Class, Plaintiff was subject to Defendants' uniform policies and practices and was compensated in the same manner as others in the New York Class. Plaintiff and the New York Class have been uncompensated

and/or under-compensated as a result of Defendants' common policies and practices which failed to comply with New York law.  As such, Plaintiff's claims are typical of the claims of the New York Class.  Plaintiff and all members of the New York Class sustained damages arising out of and caused by Defendants' common course of conduct in violation of law as alleged herein.

80.    Adequacy.  Plaintiff is a representative party who will fairly and adequately protect the interests of the New York Class because it is in her interest to effectively prosecute the claims herein alleged in order to obtain the unpaid wages and penalties required under New York law.  Plaintiff has retained attorneys who are competent in both class actions and wage and hour litigation.  Plaintiff does not have any interest which may be contrary to or in conflict with the claims of the New York Class she seeks to represent.

81.    Commonality.  Common issues of fact and law predominate over any individual questions in this matter.  The common issues of fact include, but are not limited to:

     a.  Whether Defendants properly informed Plaintiff and the New York Class Members of the intent to claim the tip credit;

     b.  Whether more than 20% of the work performed by Plaintiff and the New York Class Members was non-tip generating work;

c.  Whether Plaintiff and the New York Class Members performed work for significant periods of time before the restaurant was open for business or after it had closed for business; and

d.  Whether Plaintiff and the New York Class Members were subject to unlawful deductions.

82.  The common issues of law include, but are not limited to:

a.  Whether Defendants can claim the "tip credit";

b.  Whether Defendants violated the NYLL;

c.  Whether Plaintiff and the New York Class are entitled to compensatory damages;

d.  Whether Plaintiff and the New York Class incurred work related expenses in violation of New York law;

e.  Whether Defendants failed to furnish Plaintiff and the New York Class with a proper time of hire wage notice, as required by the NYLL;

f.  Whether Defendants failed to furnish Plaintiff and the New York Class with accurate pay statements with every payment of wages, as required by the NYLL;

g.  The proper measure of damages sustained by Plaintiff and the New York Class Members; and

h.  Whether Defendants' actions were "willful."

83.   <u>Superiority</u>.  A class action is superior to other available means for the fair and efficient adjudication of this lawsuit.  Even in the event any member of the New York Class could afford to pursue individual litigation against a company the size of Defendants, doing so would unduly burden the court system.  Individual litigation would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits.  Prosecution of separate actions by individual members of the New York Class would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Defendants.

84.   A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court.  By concentrating this litigation in one forum, judicial economy and parity among the claims of individual New York Class Members are promoted.  Additionally, class treatment in this matter will provide for judicial consistency.  Notice of the pendency and any resolution of this action can be provided to the New York Class by mail, electronic mail, text

message, print, broadcast, internet and/or multimedia publication.  The identity of members of the New York Class is readily identifiable from Defendants' records.

85.    This type of case is well-suited for class action treatment because: (1) Defendants' practices, policies, and/or procedures were uniform; and (2) the burden is on Defendants to prove it properly compensated its employees including any potential exemptions that might apply.  Ultimately, a class action is a superior form to resolve the New York claims detailed herein because of the common nucleus of operative facts centered on the continued failure of Defendants to pay Plaintiff and the New York Class Members per applicable New York laws.

## **CAUSE OF ACTION**

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

### FAILURE TO PAY THE MINIMUM WAGE

86.    Plaintiff incorporates the preceding paragraphs by reference.

87.    This count arises from Defendants' violation of the FLSA in connection with their failure to pay the minimum wage. *See* 29 U.S.C. § 206.

88.    Plaintiff and the FLSA Class Members were paid hourly rates less than the minimum wage while working for Defendants.

89.     Plaintiff and the FLSA Class Members were not exempt from the minimum wage requirements of the FLSA.

90.     Defendants' failure to comply with the minimum wage requirements of the FLSA, and, in particular, the tip credit requirements, resulted in Plaintiff and the FLSA Class Members being paid less than the Federal minimum wage rate.

91.     Defendants' failure to pay the minimum wage to Plaintiff and the FLSA Class Members, in violation of the FLSA was willful and not based on a good faith belief that their conduct did not violate the FLSA.  29 U.S.C. § 255(a).

COUNT II

VIOLATION OF THE NEW YORK LABOR LAW

FAILURE TO PAY THE MINIMUM WAGE

92.     Plaintiff incorporates the preceding paragraphs by reference.

93.     At all relevant times, Plaintiff and the New York Class Members have been employees of Defendants, and Defendants have been employers of Plaintiff and the New York Class within the meaning of the NYLL §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations.

94.     Defendants have failed to pay Plaintiffs and the New York Class Members the minimum hourly wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

95.     Pursuant to the NYLL, Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations, Defendants have been required to pay Plaintiff and the New York Class Members the full minimum wage rate that began at $8.00 per hour in 2014 to $15.00 per hour at the present.

96.     Defendants failed to notify Plaintiff and the New York Class Members of the tip credit in writing as required by the NYLL and the supporting New York State Department of Labor Regulations.

97.     Defendants required Plaintiff and the New York Class Members to spend a substantial amount of time performing non-tip producing work, as described in this Complaint.

98.     As a result, Plaintiff and the New York Class have been entitled to the full minimum wage rate rather than the reduced tipped rate.

COUNT III

VIOLATION OF THE NEW YORK LABOR LAW

UNLAWFUL DEDUCTION FROM WAGES

99.     Plaintiff incorporates the preceding paragraphs by reference.

100.    Defendants made unlawful deductions from the wages of the Plaintiff and New York Class Members.  These deductions included, but were not limited to, the

costs of purchasing pants, non-slick shoes, belts, pens, and other items to perform their work for Defendants.

101.   These deductions and expenses from the wages of the Plaintiff and New York Class Members were not expressly authorized in writing by the Plaintiff and New York Class Members and were not primarily for the benefit of the Plaintiff and New York Class Members.

102.   Due to Defendants' violations of the NYYL, the Plaintiff and Class Members are entitled to recover from Defendants the amounts of unlawful deductions and expenses, and liquidated damages as provided for by the NYYL, along with attorney's fees, costs, pre-judgment interest, and post-judgment interest.

COUNT IV

VIOLATION OF THE NEW YORK LABOR LAW

FAILURE TO PROVIDE PROPER ANNUAL WAGE NOTICES

103.   Plaintiff incorporates the preceding paragraphs by reference.

104.   Defendants have failed to supply Plaintiff and the New York Class Members with a proper time of hire annual wage notice, as required by NYYL, Article 6, § 1951(1), in English or in the language identified as their primary language, at the time of hiring, containing, among other items: the rate or rates of pay and basis thereof; allowances, if any, claimed as part of the minimum wage; the

regular pay day designated by the employer in accordance with section 191 of Article 6; overtime rate; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

105.    Due to Defendants' violations of NYYL, Article 6, § 195(1), Plaintiffs and the New York Class Members are entitled to statutory penalties of fifty dollars for each workday that Defendants failed to provide them with wage notices, or a total of five thousand dollars each, as well as reasonable attorneys' fees and costs pursuant to NYLLL, Article 6, § 198 (1-b).

COUNT V

VIOLATION OF THE NEW YORK LABOR LAW

FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS

106.    Plaintiff incorporates the preceding paragraphs by reference.

107.    Defendants failed to supply Plaintiff and the New York Class Members with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employer; address and phone number of employer; rate or rates of pay and

basis of pay; gross wages; deductions; allowances if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rates of pay, if applicable; the number of hours worked, including overtime hours worked if applicable; and net wages.

108.    Due to Defendants' violations of NYLL, Article 6, § 195(3), Plaintiff and the New York Class Members are entitled to statutory penalties of two hundred fifty dollars for each workweek that Defendants failed to provide them with accurate wage statements, or a total of five thousand dollars, and reasonable attorneys' fees and costs as provided by NYLL, Article 6, § 198 (1-d).

## JURY DEMAND

109.    Pursuant to her rights under the Constitution of the United States, U.S. CONST. amend VII, and FED R. CIV. P. 38(a), Plaintiff hereby demands trial by jury.

## PRAYER FOR RELIEF

110.   For these reasons, Plaintiff respectfully requests that judgment be entered in her favor awarding her and the Class Members:

a. Minimum wage compensation unadulterated by the tip credit;

b. Liquidated damages;

c. Reimbursement for all expenses and wages wrongfully withheld;

d. Statutory penalties as described in this Complaint;

e.  An order conditionally certifying this matter as a collective action;

f.  An order certifying this case as a class action under Rule 23;

g.  An order requiring Defendants to correct their pay practices going forward;

h.  Reasonable attorney's fees, costs, and expenses of this action;

i.  Pre-judgment interest (to the extent liquated damages are not awarded) and post judgment interest; and

j.  Such other and further relief to which Plaintiff and the Class Members may be entitled, both in law and in equity.

Respectfully submitted: November 18, 2021.

By: */s/ A. Lee Parks*
A. Lee Parks
Georgia Bar No. 563750
lparks@pcwlawfirm.com
John L. Mays
Georgia Bar No. 986574
jmays@pcwlawfirm.com
Parks, Chesin & Walbert, P.C.
75 Fourteenth Street
26th Floor
Atlanta, GA 30309
Tel. (404) 873-8000
Fax. (404) 873-8050

And

Don J. Foty
(will apply for admission pro hac vice)
Hodges & Foty, LLP

Texas Bar No. 24050022
4409 Montrose Blvd, Ste. 200
Houston, TX 77006
Telephone: (713) 523-0001
Facsimile: (713) 523-1116
dfoty@hftrialfirm.com

And

Anthony J. Lazzaro
Ohio Bar No. 0077962
(will apply for admission pro hac vice)
Alanna Klein Fischer
Ohio Bar No. 0090986
(will apply for admission pro hac vice)
Lori M. Griffin
Ohio Bar No. 0085241
(will apply for admission pro hac vice)
The Lazzaro Law Firm, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, Ohio 44022
Phone: 216-696-5000
Facsimile: 216-696-7005
anthony@lazzarolawfirm.com
alanna@lazzarolawfirm.com
lori@lazzarolawfirm.com

Attorneys for Plaintiff and Class Members